**Opinion filed May 16, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00144-CR
_____

### TIMOTHY WAYNE STIRLE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR48210**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Timothy Wayne Stirle, of the state jail felony offense of burglary of a building. After the jury found the enhancement paragraphs to be true, it assessed Appellant's punishment at confinement for ten years. The trial court sentenced Appellant accordingly. Appellant presents two issues on appeal. In his first issue, Appellant challenges the sufficiency of the evidence to support his conviction. Specifically, Appellant contends that the evidence is insufficient to

show that he intended to commit theft when he entered the building. In his second issue, Appellant challenges the admissibility of certain pieces of extraneous evidence. We affirm.

*Evidence at Trial*

In the evening of August 20, 2016, Officer Gage Smith, a police officer with the Midland Police Department, responded to an alarm at the New Horizons Child Development Center, a daycare business in Midland. At the time, the daycare was closed to the public.

Officer Smith was one of the first officers to arrive on scene. When he arrived, Officer Smith searched around the back of the building in the alley. While there, he noticed that the gate of the wooden fence surrounding the back of the building "was forced open." Inside the fence, Officer Smith located a "shed" adjacent to the building. According to Officer Smith, someone "had busted into it and scavenged through it." The door of the shed was ripped off and completely unhinged, and the padlock of the door was broken off and lay on the ground near the door.

Inside the fenced area, Officer Smith also noticed another open door, which led into the building. When he went inside, Officer Smith found himself in "a maintenance closet," which contained "AC units." Inside the room, between the AC units, Officer Smith noticed a large hole "forced through the drywall leading into the [daycare]" itself. Officer Smith and another officer crawled through the hole and entered a bathroom of the building, which led into a hallway. The officers then "cleared the business" and did not find anyone inside.

Shortly afterwards, Trayce Leal, the co-owner of the daycare, arrived on scene. Leal testified that she had received a call from her security company, informing her that her daycare "was being broken into." Leal testified that her daycare contained video surveillance cameras and a security alarm system that detects motion. When Leal arrived, she unlocked the front door and turned off the

2

alarm. Leal then permitted the police to view the surveillance footage from the security cameras.

At trial, Officer Smith testified about the surveillance footage. According to Officer Smith, in the surveillance footage, he could see "a white male wearing a black and green hat" and "a Marine Corps shirt." Officer Smith then testified about the intruder's actions inside the building. Officer Smith explained that the intruder entered the building through the bathroom. Officer Smith testified that the intruder then ran down the hallway toward the front of the business, where the "main office," "main desk," and "cash register" were located. In doing so, the intruder set off the motion sensors in the building, which, in turn, set off the audible alarm. After setting off the alarm, the intruder immediately turned around, ran out an exit in the back of the building, jumped the fence, and fled the scene by running down the alley. Officer Smith further testified that the intruder was inside the building for "[a]pproximately 30 seconds to a minute."

The record reflects that nothing from the building was reported stolen. Leal testified that she did not know who the intruder was and had never given him permission to be inside her daycare. Leal also explained that the shed was "normally locked" and that the door to the maintenance closet was "typically locked."

Later that night, Officer Smith and Officer Allen Chilson responded to a call concerning a person located too close to the railroad tracks. Upon arrival, the officers approached an individual who was "passed out" a few inches from the train tracks. Officer Smith noticed that the gentleman "had a green and black hat on and the USMC shirt." Officer Smith immediately recognized the individual as the intruder in the video from the burglary earlier that day. At trial, Officer Smith identified the intruder in the video and the person at the train tracks as Timothy Stirle.

3

After finding Appellant, the officers woke him up and placed him under arrest for burglary of a building. Officer Smith then patted Appellant down and grabbed his wallet in order to identify him. Officer Smith testified that, although they were unable to locate Appellant's ID, they were able to locate a debit card and a social security card inside the wallet. Officer Smith explained that the cards did not belong to Appellant because they both contained the name of another person. The officers also located other property around Appellant. Officer Chilson testified that the other property included "[b]roken locks, some doorknobs," a seven-amp drill, a grinder, "a hand saw, a drill bit set," a lawnmower, some sandals, and "a Game of Thrones puzzle." Neither Officer Smith nor Officer Chilson were able to confirm that the property in Appellant's possession was stolen. The record reflects that Appellant is known to dig through the trash to acquire property, such as his clothes and shoes.

After arresting Appellant and collecting the property, Officers Smith and Chilson transported Appellant to the police station, where Appellant was interviewed by Detective Blake Bush. The full interview was recorded, and the State published a part of the interview to the jury. In the video, Detective Bush showed Appellant several screenshots taken from the daycare's video surveillance cameras. After being shown these pictures, Appellant confessed that he was the individual in the pictures. During the interview, Appellant explained why he had made the hole in the wall and was inside the building. Appellant first stated that he was trying to get in the building to "see what was in there." Appellant later stated that he "wanted a place to get away" and that he was just "trying to sleep."

*Analysis*

In Appellant's first issue, he contends that the evidence was legally insufficient to support his conviction. Appellant directs his sufficiency challenge to the element of intent. According to Appellant, the State failed to present any evidence of his intent to commit theft when he entered the building. We disagree.

4

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When we conduct a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Additionally, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight to be afforded their testimony. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Moreover, in our review of the record, direct and circumstantial evidence are treated equally. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Clayton*, 235 S.W.3d at 778. We also note that, even if every fact does not "point directly and independently to the guilt of the accused," the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

A person commits burglary of a building when that person, "without the effective consent of the owner," enters "a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault." Tex. Penal Code Ann. § 30.02(a)(1) (West 2019). A person intends to commit theft if he intends to unlawfully appropriate property with intent to deprive the owner of the property. *Id.* § 31.03(a). Intent may be inferred from circumstantial evidence, such as acts, words, and the conduct of a defendant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Evidence of intent includes, but is not limited to, evidence of the following: forcible entry, joblessness, lack of transportation and funds, implausible and inconsistent explanations, and flight upon being interrupted during or after the commission of the offense. *See Gear v. State*, 340 S.W.3d 743, 747–48 & n.9 (Tex. Crim. App. 2011).

Here, Appellant entered the daycare without the permission of the owner and when it was not open to the public. He did so by entering the maintenance closet of the daycare, located on the back side of the building. While inside, Appellant forcibly created a large hole in the wall and entered a bathroom of the daycare. According to Officer Smith, the video camera inside the building recorded Appellant running toward the front of the building. Officer Smith testified that the cash register was located in the front of the building. Before Appellant reached the front, however, he set off the motion sensors inside, which triggered the security alarm. Immediately after triggering the alarm, Appellant ran to the back door and fled the scene. Officer Smith testified that Appellant was only inside the building for approximately thirty seconds to a minute. Appellant's forcible entry into the building, his running toward the cash register, and his immediate flight once he triggered the alarm is circumstantial evidence of Appellant's intent to commit theft. *See Gear*, 340 S.W.3d at 747–48 & n.9.

6

Moreover, evidence of Appellant's inconsistent and implausible explanations about why he was inside the building also indicate that Appellant entered the building with the intent to commit theft. When Detective Bush asked Appellant why he was inside the building, Appellant first stated that he was simply inside the building to "see what was in there" but then later stated that he was trying to find "a place to get away" and "sleep." Further, these explanations are not plausible in light of Appellant's conduct while inside the building—running to the front of the building where the cash register was located. Appellant's conduct, rather than establishing that he was innocently looking around or trying to find a place to sleep, indicates that he acted deliberately and with a criminal purpose. Based on this evidence, when viewed in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the existence of each of the elements of the offense of burglary of a building, including that Appellant had the intent to commit theft when he entered the building, beyond a reasonable doubt.

Appellant also bases a part of his insufficiency argument on the fact that there is no evidence that he took any property from the building. However, once Appellant "entered" the building with the intent to commit theft, the offense of burglary of a building, as charged in this case, was complete; it was not necessary for Appellant to actually take any property. *See Richardson v. State*, 888 S.W.2d 822, 824 (Tex. Crim. App. 1994).

Therefore, we conclude that the evidence was sufficient to find Appellant guilty of the offense of burglary of a building. We overrule Appellant's first issue.

In Appellant's second issue, he contends that the trial court abused its discretion when it admitted extraneous evidence in violation of Rule 404(b) of the Texas Rules of Evidence. Specifically, Appellant argues that the trial court erred when it permitted the State to introduce evidence of the debit card and the social security card found in Appellant's possession, both of which belonged to another

individual. According to Appellant, the State did not prove that these two items were unlawfully taken or that this evidence served some permissible purpose under Rule 404(b).

Even if we assume, without deciding, that the admission of the debit card and the social security card constitutes error, we conclude that their admission did not harm Appellant. The erroneous admission of evidence generally constitutes nonconstitutional error. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We must disregard a nonconstitutional error if it does not affect substantial rights. TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla*, 78 S.W.3d at 355 (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). In assessing the likelihood that the jury's decision was adversely affected by the error, we must "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.*

Here, although Officer Smith testified that he found a debit card and a social security card in Appellant's wallet and that the two cards were in another person's name, his testimony about the cards was brief and nonspecific. Instead, Officer Smith focused more on how Appellant forcibly entered the daycare and his actions once inside the building—Appellant running toward the front of the building toward the cash register and then taking flight once he triggered the security alarm. Similarly, during its closing arguments, the State focused on Appellant's violent

8

actions before and during the burglary and only briefly mentioned his possession of the two cards. The State also centered its closing arguments on disproving Appellant's explanations for why he was inside the building, arguing that Appellant was not in the building innocently looking for a place to sleep but, rather, was looking for something to steal. Moreover, as discussed above in our disposition of Appellant's first issue, even without evidence of the debit card and the social security card, the State presented overwhelming evidence of Appellant's guilt. In light of such evidence, and after examining the record as a whole, we have fair assurance that the admission of the debit card and the social security card did not influence the jury's verdict, or influenced the jury only slightly. *See Motilla*, 78 S.W.3d at 355. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


May 16, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.